## The County of Lawrence and Overseers of North Beaver Township *versus* Eli Leonard *et al.*

1. Testator directed the balance of his estate to be put at interest, in the county treasury, for ten years and the interest thereof yearly to be applied to the support of the poor of a certain township, and at the expiration of that time the interest to stop and the principal to remain in the treasury for the use of the county forever. The court below being of the opinion that there was no trustee of the fund held that the legacy was too vague to be sustained and decreed it void for uncertainty. *Held* to be error.

2. It was clearly the intent of the testator that the county should become the trustee, and as such it had the power to take and hold the property and administer the trust.

[County of Lawrence *et al.· v.* Leonard.]

3. The county being competent to take the fund as a trustee of the testator's own appointment the vagueness of the trust or uncertainty of the subject of the charity is not material.

November 23d 1876. Before AGNEW, C. J., SHARSWOOD, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS and MERCUR, JJ., absent.

Appeal from the decree of the Common Pleas of *Lawrence county.* In equity. Of October and November Term 1876, No. 48.

This was a bill in equity filed by the County of Lawrence and the Overseers of the Poor of North Beaver Township against Eli Leonard.

The case was thus :—

Abner Leonard, a citizen of North Beaver township, Lawrence county, about seventy years of age, died June 1st 1868, at his residence in said township, where he had lived for many years., He left neither wife nor children. His estate consisted of real estate in the township and some personal property. His will, made in 1864, contained this provision :—

" Whatever money may remain after the legatees are paid and the claims of the Commonwealth, if any, and my just debts, and the expenses of settling of my estate are all paid, the balance shall be put to interest in the county treasury, for ten years, of Lawrence county, and the interest yearly of it to be applied to the support of the poor of North Beaver township. Then at that period they stop the interest, and keep all that is in treasury for the use of the county forever."

Commencing in April 1870, the executors of said will paid, at different times, into the county treasury the residue of said estate, amounting in the aggregate to about $4000, and for several years the county of Lawrence paid the interest on said money to the overseers of the poor of North Beaver township, who made claim to the same under the provisions of the will.

In February 1875, Eli Leonard for himself and others who claimed to be the next of kin to Abner Leonard, deceased, filed this bill in equity, praying that the above clause in said will might be declared void for uncertainty and that the interest on the money paid into the county treasury from the time it was so paid for a period of ten years, should be paid to the plaintiffs.

The county and the overseers of the township filed an answer, admitting the facts set forth in the bill, but averred,

" That at the time of the making of said will, there were poor persons in the said township of North Beaver, having a settlement therein, being public paupers, and a legal charge upon said township, for whom the duly qualified overseers of poor of said township were providing and were supporting according to law, and that the said Abner Leonard, at the time of making his said will, well knew these facts ; and that at all times since the making of

[County of Lawrence *et al. v.* Leonard.]

said will, there have been and now are poor persons, paupers, in the said township having a settlement therein, for whom the duly qualified overseers of the poor of said township have been providing."

The case was argued on bill and answer, and the court decreed that the bequest was void for uncertainty and that the interest on the money for ten years should be paid to the next of kin of Abner Leonard.

In an opinion the court said: "We think this bequest void for uncertainty as to its objects and the beneficiaries intended. The poor of the township are not described by the testator, and cannot be defined or ascertained with sufficient certainty to take or show in the testator's intended bounty. The bequest is not vested in any one or anywhere. There is no trustee appointed by the will. Nor is there any trustee even designated by implication anywhere in the will to take the bequest and apply it. There is no discretionary power given to any one or vested anywhere to have control over the bequest or to carry it into effect by applying it to the support of the poor of the township."

After a review of the cases of Pickering *v.* Shotwell, 10 Barr 23; McGirr *v.* Aaron, 1 P. & W. 49; Witman *v.* Lex, 17 S. & R. 93; Zeiswess *v.* James, 13 P. F. Smith 465; Martin *v.* McCora, 5 Watts 495; Brown *v.* Filson, 8 Barr 335, and Missionary Society's Appeal, 6 Casey 425, the court proceeded: "From these authorities we conclude that a charitable bequest may be sustained where the objects or beneficiaries of it are uncertain and incapable of being rendered certain, provided there is a trustee appointed or designated by the will capable of taking, with discretionary power, either express or implied, to carry the bequest or donation into effect; or where the objects and beneficiaries are defined and certain, and no trustee appointed or designated by the will, a trustee may be appointed by the court and directed by the same to carry the bequest into effect. But where the objects or beneficiaries are uncertain, and cannot in any way be rendered certain, and no trustee capable of taking the bequest or donation has been appointed or designated by the testator or donor, and clothed with discretionary power over the bequest, gift or donation, a court of equity will not in the exercise of arbitrary power undertake to appoint a trustee and define, describe or designate the objects, purposes or beneficiaries of the donation.

"The bequest is to be applied to the support of the poor of North Beaver township. Who are they? There are degrees in poverty even. What class shall take, and who can draw the line and separate from the rest those entitled to share in the bequest; with whom begin to apply the support, and with whom leave off? This uncertainty in the beneficiaries of the bequest will render it void, unless according to the authorities cited, there is a trustee appointed or

[County of Lawrence *et al. v.* Leonard.]

designated by the testator competent to take the bequest and clothed with discretionary power to apply it. We can find no such trustee named in the will. The executor of the will has no power over the bequest. The county treasurer has no control over it, nor have the county commissioners. Since there is no trustee, there can be no discretionary power vested anywhere by anything express or implied in the will, over the disposition of the bequest."

From the decree of the court this appeal was taken.

*Oscar L. Jackson,* for the County of Lawrence, and *L. L. McGuffin,* for North Beaver Township.—In Pennsylvania the poor of a township are a certain and well-known class. They are the paupers supported by the township. This is not only the meaning among the people generally, but is a common expression in our Acts of Assembly. Webster defines "poor" in law to be those entitled to maintenance from the public.

Charitable bequests lacking a trustee, and being indefinite, are provided for by Act of Assembly of April 20th 1855, sect. 10, Pamph. L., p. 331; Purdon 207, sect. 18. Besides this, the principles of the statute of 43 Elizabeth, c. 4, obtain here: Witman *v.* Lex, 17 S. & R. 88. Bequests to the poor of any township are available and pass to the overseers of poor of such township: Act of Assembly of March 9th 1771, sect. 15, 1 Sm. Laws 338; Purdon 1160, sect. 42.

This bequest is entitled to the benefit of the rules relating to charities, and on general principles should be sustained: 1 Redfield on Wills 688, sect. 38; Id. 695, sect. 50; Gregg *v.* Irish, 6 S. & R. 210; Pickering *v.* Shotwell, 10 Barr 23.

If this devise could be sustained in no other way, the county of Lawrence might be a trustee to carry out the purposes of the will: Mayor of Philadelphia *v.* Elliott, 3 Rawle 170. See also Cresson's Appeal, 6 Casey 437; Domestic Missionary Society's Appeal and the numerous authorities therein cited.

*Dana* and *Long,* for appellees.

Chief Justice Agnew delivered the opinion of the court, January 2d 1877.

The learned judge of the Common Pleas believing that there was no trustee of the fund in question was of opinion that the legacy of Abner Leonard for the support of the poor of North Beaver township was too vague to be sustained, and therefore that it failed. But he overlooked the effect of the will, which substantially gave the fund to the county of Lawrence, and made it the trustee of the interest. The language is this: "Whatever money may remain after the legatees are paid, and the claims of the Commonwealth,

2 Norris—14·

[County of Lawrence *et al. v.* Leonard.]

if any, and my just debts and the expenses of settling up my estate are all paid, the balance shall be put to interest in the county treasury, for ten years, of Lawrence county, and the interest, yearly, of it to be applied to the support of the poor of North Beaver township. Then at that period they stop the interest, and keep all that is in the treasury for the use of the county forever." The will was evidently written by an unlearned person. We must therefore search for the true meaning of the language used. The money was to go into the county treasury, the place where county moneys are kept. It clearly was not for the benefit of the treasurer, nor was it intended he should dispose of it, for at the end of ten years "they" were to stop the interest—that is, those persons who controlled the moneys of the county—then they were to "keep" the money for the *use of the county* for ever. Clearly the intent was to place the fund under the control of those who manage the county affairs, and these were the commissioners. The county, therefore, became the owner of the fund, and through its officers was to put it at interest, and apply the interest for ten years to the support of the poor of the designated township, and at the end of that term to become the full owner. Thus a trustee was appointed by the testator and the only question remaining is as to the capacity of the county to take as a trustee. On this point we perceive no difficulty. By the 3d section of the Act of 15th April 1834, counties and townships have capacity as bodies politic for certain purposes, the second enumerated being, " to take and hold real estate within their respective limits, and also personal property." Before the passage of this act it had been held in Vankirk *v.* Clark, 16 S. & R. 286, that the commissioners could buy in lands to secure a debt due to the county, and also could maintain suits in the name of the county. The Act of 1834 gave certain express powers to the county, one of which is the acquisition of property. A proviso to the words above quoted contains the following limitation : " Provided, that such real and personal estate shall be taken and held for the benefit of the inhabitants of the respective county or township, and for such objects and purposes, and none other, as county and township rates are now or hereafter may be authorized by law to be laid and collected, and for such other objects and purposes as may hereafter be expressly authorized by law." That the poor of a township or a county are proper objects of the public care, and may be supported by taxation, it needs no argument to prove. They stand much nearer to the public heart than many other charities do, determined to be valid when held by municipal corporations. For example, a bequest to a city to expend the income in planting shade trees : Cresson's Appeal, 6 Casey 437. The charity being public in its character, and such as a municipal corporation may serve, the extent of it is immaterial. The township is a district of the county for the support of the poor,

[County of Lawrence *et al. v.* Leonard.]

and the legacy to the county is in ease of that portion of the people of the county. The mere naming of the class of persons to whom the charity is to be given does not change its nature, which is one that may be administered by the larger or smaller municipality, as convenience may dictate. The legacy, therefore, falls within one of the objects for which a county or a township may take and hold property, and therefore is not outside of the proviso limiting the power of the county. In addition to this reasoning the principle of the case is sustained by the following authorities maintaining the power of a municipal corporation to administer a trust: Philadelphia *v.* Cresson, 3 Rawle 170; Vidal *et al. v.* Philadelphia, 2 How. 127; Philadelphia *v.* Non, 14 P. F. Smith 170; Girard *v.* Philadelphia, 7 Wall. 14; Cresson's Appeal, 6 Casey 437. The county being competent to take the fund as a trustee of the testator's own appointment, the vagueness of the trust or uncertainty of the subjects of the charity is not material. This is well settled by authority: Witman *v.* Lex, 17 S. & R. 88; Pickering *v.* Shotwell, 10 Barr 23; The Domestic and Foreign Miss. Soc.'s Appeal, 6 Casey 425; Zeiswess *v.* James *et al.*, 13 P. F. Smith 425.

Decree reversed, and the plaintiffs' bill dismissed with costs to be paid by them.