## Shepp Estate

*John G. Callender*, for accountant.

*Ronald J. Ulmer*, for Commonwealth.

GANGLOFF, P. J., April 2, 1962.—E. M. B. Shepp, who died February 21, 1958, left a last will and testament and codicil thereto in which he named the First National Bank of Tamaqua as executor thereof. The Miners National Bank of Pottsville, by merger, succeeded the First National Bank of Tamaqua as executor of this estate. Testator, in his will and codicil thereto, makes the following disposition of his estate:

To the First National Bank of Tamaqua $4,000 in trust to use the income for maintenance of his mausoleum in the Odd Fellows Cemetery at Tamaqua aforesaid and for the placing of flowers in the mausoleum and in the urn on his cemetery lot at specified times; also to place flowers on his parents' cemetery lot yearly on Memorial Day. Testator authorizes the trustee to use principal if necessary for extensive repairs...

To his three charitable trusts set up in his lifetime, namely, "The Rosalind Shepp Public School Trust," "The E. M. B. Shepp Charity Trust" and "The Rosalind Shepp Public Library Trust," a sufficient sum of money to make the principal of each trust equal to $25,000. For this purpose testator authorizes his executor to transfer up to 200 shares of his stock in the First National Bank of Tamaqua to each of the first two trusts and up to 300 shares of his stock in the same bank to the third trust. The testator values the bank stock so to be transferred to each of the three trusts at $50 per share. . .

On February 16, 1962, an additional inheritance tax was assessed by the register as agent for the Commonwealth in the amount of $2,574.92 and $463.49 penalty, or a total of $3,038.41. This assessment is upon the following:

> "Bequest to Miners National Bank, Trustee, disallowed        4,000.00
>
> Bequest to Miners National Bank, Trustee of E. M. B. Shepp Charity Trust, disallowed        13,166.16
>
>        _____
>
>        17,166.16"

Upon receipt of notice of the additional tax so assessed, the executor filed a supplemental statement of debts and deductions wherein it claims as deductions $4,000 for maintenance of the mausoleum as provided in the will, and "of the $13,166.16 bequest, the executor requests as a deduction for maintenance of the decedent's mausoleum the sum of $10,000.00." The total claimed as deductions is $14,000. The agent refused to allow the claimed deductions. Whereupon counsel for the executor notified the tax authorities that the dispute would be referred to the orphans' court, at the audit of the executor's account, for disposition. That

this is the proper procedure there can be no doubt: Weir Estate, 399 Pa. 612.

As already noted, in this estate the Commonwealth in the original assessment of the inheritance tax treated the bequests of $4,000 and $13,166.16 above referred to as tax exempt. There seems to have been a change in viewpoint and there followed the assessment of the tax against these two bequests. Counsel for the estate thereupon filed a statement of deductions, as already noted. These deductions of course were not included in the statement of deductions filed in connection with the first or original assessment.

The respective contentions may be stated as follows:

(a) For decedent's estate it is contended that the bequest of $4,000 for maintenance of the mausoleum is within the category of reasonable as provided in the Inheritance Tax Act of June 20, 1919, P. L. 521; that $10,000 of the bequest of $13,166.16 to the charity trust is within the same category as the $4,000 bequest; and that the balance of $3,166.16 also is exempt for the reason that the bequest is for a charitable purpose.

(b) For the Commonwealth the contention is stated by its counsel as follows: "And the Commonwealth takes the position that a reasonable amount to be used for the care and maintenance of the mausoleum, and the Commonwealth is willing to rely on the Dreisbach Estate, and agrees that $14,000.00 total would be a reasonable amount. Now, that would be $12,000.00 in the Trust Fund and an additional $2,000.00 for the estate. As to the balance the Commonwealth questions whether that trust is a charitable trust, and only for poor people; that there are certain qualifications set forth in the trust. And the Commonwealth takes the position it is not really a charitable trust."

The Dreisbach Estate referred to by counsel for the Commonwealth is reported in 87 D. & C. 392. In that estate, the Orphans' Court of Lehigh County found

that $15,000 is a reasonable amount for care and maintenance of a family burial lot for an estate having a gross value of $359,410.01 and a net value of $314,503.81, after debts and administration expenses.

The trust fund referred to by counsel for the Commonwealth in his statement made at the audit hearing is the E. M. B. Shepp Charity Trust referred to in the will, the provisions of which, in so far as applicable presently, follow:

On November 3, 1952, decedent, E. M. B. Shepp, executed an inter vivos trust agreement with the First National Bank of Tamaqua aforesaid as trustee whereby he created what is therein designated "The E. M. B. Shepp Charity Trust" for the following purposes:

"2. The said trust is for the care and maintenance of the Grantor's mausoleum and lot in the Odd Fellows Cemetery in the Borough of Tamaqua, and for the purchase of red roses to be placed in a vase to be set on the pedestal or on the grantor's wife's tomb on Memorial Day yearly, and for the purchase of an evergreen wreath to be placed on the door of the mausoleum yearly at Christmas, and for the purchase of either geranium plants or floral bouquets to be placed on the lot of my father and mother on Memorial Day yearly.

"3. The said trust is also for the purpose of charity amongst the poor and needy persons living in the Borough of Tamaqua, Schuylkill County, Pennsylvania, irrespective of color or religion. By poor and needy persons is not meant the habitual poor and needy that we always have with us, but rather those who have had the misfortune to become so by circumstances beyond their control, such as those who are poor and needy because of the necessity of the payment of taxes; interest on bank obligations and payment of unforseen medical or surgical expenses that makes it a real hardship for them to exist . . .

"6. The Trustee shall apply the first One Thousand ($1,000.00) Dollars of the net income as soon as the trust property shall reach the total of Twenty Five Thousand ($25,000.00) Dollars in accordance with the provisions as outlined in paragraph 2 of this agreement, and the unexpended balance of the net income in excess of $1,000.00 shall be distributed by a local charity committee composed of three (3) reputable citizens, either male or female, chosen each year by the Trustee for the charitable purposes outlined in Paragraph No. 3 hereof.

"7. If the grantor should die before the Twenty Five Thousand ($25,000.00) Dollars is accumulated in the trust fund, the grantor has provided in his will to make up the difference so that the trust can become active at his death."

The applicable provisions of the Inheritance Tax Act of June 20, 1919, P. L. 521, as amended a number of times, allow as proper deductions in the assessment of the tax "reasonable and customary funeral expenses, bequests, or devises in trust, in reasonable amounts, the entire interest or income from which is to be perpetually applied to the care and preservation of the family burial lot or lots, their enclosures and structures erected thereon, reasonable expenses for the erection of monuments or grave stones, grave and lot markers and the expenses of administration of such estates . . .": see 72 PS §2302. As to charitable bequests, the Inheritance Tax Act exempts from the inheritance tax "any property, real or personal, or of any vested or future interest therein or income therefrom, in trust or otherwise . . ." transferred by will "to or for the use of any corporation, unincorporated association, or society, organized and operated, exclusively, for religious, charitable, scientific, literary or educational purposes . . ."; or transferred by will "to a trustee or trustees . . . exclusively, for religious, charitable, scientific,

literary or educational purposes . . .": see 72 PS §2301.1.

The Inheritance Tax Act of 1919, supra, authorizes, as already pointed out, a deduction, in the assessment of the tax, of bequests in reasonable amounts the entire income from which is to be perpetually applied to the care and preservation of the family burial lot, the enclosures and structures thereon erected. Moreover, cemetery trusts do not violate the common law rule against perpetuities: see section 4(b) (1) and (2) of the Estates Act of April 24, 1947, P. L. 100. Our specific primary problem here therefore is narrowed to this: Are the bequests in trust for maintenance of the mausoleum and lot reasonable in amount as contemplated by the Inheritance Tax Act?

Depending upon our answer to the primary problem above identified, there may be for solution another problem, namely, whether the charity trust is a legal trust for charitable purposes and as such exempt from payment of an inheritance tax. As already noted, charitable bequests are exempt from inheritance tax. Moreover, a perpetual trust for charity is valid: The City of Philadelphia v. The Heirs of Stephen Girard, 45 Pa. 9; Darlington's Estate, 289 Pa. 297; McKee Estate, 378 Pa. 607.

The Commonwealth admits that $2,000 of the $4,000 bequest in trust for maintenance of the mausoleum and lot is a proper deduction for inheritance tax purposes, whereas the contention of the estate is that the entire bequest of $4,000 is deductible. The Commonwealth also admits that $12,000 of the bequest of $13,166.16 to the charity trust is a proper deduction for maintenance, whereas the estate contends that a proper deduction is $10,000. The Commonwealth questions whether the remaining $3,166.16 ($4,000 less $2,000, and $13,166.16 less $12,000) is a proper deduction as a a charitable bequest, whereas the estate contends that

the charity trust is a legal trust for charitable purposes insofar as concerns surplus income not used for maintenance of the mausoleum and lot.

Testator here specifically earmarks $4,000 as a trust fund for maintenance of the mausoleum and lot whereas the bequest to the charity trust is a bequest of a fund to be added to the corpus of an inter vivos trust the purpose of which is to be found not in the will but in the inter vivos trust indenture. Such being the situation it appears to be more in keeping with facts to treat the $4,000 trust as an entity rather than splitting it as contended by the Commonwealth. We adopt the former viewpoint and find that the $4,000 trust for maintenance of the mausoleum and lot qualifies and more than qualifies as a reasonable amount for the purpose when assessing the inheritance tax.

Upon the question of what is a reasonable amount as a deduction for maintenance of the mausoleum and lot it appears entirely proper to say that although the Commonwealth makes a distinction between the $4,000 bequest and the $13,166.16 bequest, there is in essence no distinction for the reason that both bequests are for the same primary purpose with the latter having the added feature of providing for disposition of surplus income not needed for maintenance of the mausoleum and lot.

The Commonwealth admits that a total deduction of $14,000 would be reasonable for maintaining the mausoleum and lot. Two thousand dollars of this falls by reason of our finding that the $4,000 trust is within the category of reasonable. We then find the issues thus: the Commonwealth admits that $12,000 of the $13,166.16 bequest to the charity trust is a reasonable amount for maintenance of the mausoleum and lot, and contends that $3,166.16 remains in trust for the poor and needy as defined in the trust indenture and is subject to inheritance tax for the reason that the purpose

is not a charitable purpose exempt from the tax. The estate fixes the exempt amount for the charity trust at $10,000 but contends that the balance is not taxable for the reason that it is a legal trust for a charitable purpose.

Testimony upon the question of cost of maintenance of the mausoleum and lot was not offered. Counsel for the parties in interest accepted the findings in Dreisbach Estate, 87 D. & C. 392, as the basis of their respective contentions. As already mentioned, in the Dreisbach case, the value of which corresponds with the value of the estate here, the court found $15,000 to be reasonable for maintenance of the mausoleum and lot. In the present estate, the Commonwealth agrees that $14,000 is reasonable. In keeping with Dreisbach Estate, supra, we conclude that $14,000 is reasonable. Testator bequeathed a total of $17,166.16 in trust for maintenance of the mausoleum and lot. There remains therefore $3,166.16 for allocation to the charity trust for the poor and needy as therein defined.

The Estates Act of 1947, P. L. 100, sec. 1 (1), defines charity or charitable purposes thus: " 'Charity' or 'charitable purposes' includes but is not limited to the relief of poverty, the advancement of education, the advancement of religion, the promotion of health, governmental or municipal purposes, and other purposes the accomplishment of which is beneficial to the community."

In Restatement, Trusts, §369, the rule is: "A trust for the relief of poverty is charitable"; and the following comments clarify the rule:

"a. Methods of assisting the poor. A trust to assist the poor is charitable whether the method of assistance which is provided for by the terms of the trust is by the distribution of money or goods among the poor, by letting land to them at a low rent, by making loans to them, by assisting them to secure employment, by the

establishment of a home or other institution, by providing soup kitchens and the like.

"b. General trust for the poor. A trust for the relief of poverty generally, without specifying the method to be employed, is valid as a charitable trust. Thus, a trust 'for the poor' or 'for the benefit of the poor' is charitable. . . .

"d. Destitution unnecessary. A trust to aid persons who are in need is a charitable trust although the persons to be aided are not absolutely destitute. Thus, a trust to assist persons who have an income which does not afford the necessities of life without such assistance is charitable. So also, a trust to establish a home for such persons is charitable. . . .

"f. Incidental benefit to others than poor persons. A trust to assist poor persons is charitable although the effect of assisting them is to help the rich or well-to-do by diminishing the amount of taxes which they would otherwise be compelled to pay.

"A trust to assist the poor is charitable although the effect may be to relieve relatives of the persons so assisted from a legal duty to support them.

"g. Limitation of beneficiaries to particular place or class. A trust for the relief of poor persons is charitable whether it extends to all poor persons, or is limited to those residing in a particular district, or those of a particular class, provided that the class is not so small that the relief of the class is not of benefit to the community.

"A trust for the relief of poverty is charitable although the beneficiaries are limited to the inhabitants of a particular place, whether a particular country, state, city, town or parish. . . .

"h. Where class is too narrow. . . . Thus, a trust for the relief of poor descendants of the settlor is not a charitable trust, but a trust for the relief of poor persons in general is charitable although preference is to be given to descendants of the settlor. . . ."

In Funk Estate, 353 Pa. 321, at pages 323-24, the court said:

" ' "A charitable use, where neither law nor public policy forbids, may be applied to almost anything that tends to promote the well-doing and well-being of social man" ' . . . 'The word "charitable", in a legal sense, includes every gift for a general public use, to be applied, consistent with existing laws, for the benefit of an indefinite number of persons, and designed to benefit them from an educational, religious, moral, physical or social standpoint. In its broadest meaning it is understood "to refer to something done or given for the benefit of our fellows or the public." ' . . . 'Charitable uses may be unlimited in number and are not to be determined by the application of any narrow criterion. Whether a purpose is charitable must be ascertained from a consideration of all surrounding circumstances. A design to achieve objects beneficial to the community is common to all charitable purposes. . . . The concept of a charity is continually broadening.' " See also Voegtly Estate, 396 Pa. 90.

The provisions of the charity trust insofar as they relate to "charity amongst the poor and needy persons in the Borough of Tamaqua" clearly provide for aid to an unlimited number of persons living in that borough who may need help in the payment of their taxes, interest on debts (bank obligations) and unforseen medical or surgical expenses; they need not be destitute; moreover the aid to be given to them obviously will help the community in which they live.

Under the facts and the legal principles applicable, as hereinbefore referred to at length, we are convinced and find that the charity trust insofar as it provides for aid to the poor and needy is a charitable trust exempt from the inheritance tax. See The County of Lawrence and Overseers of North Beaver Township v. Leonard, 83 Pa. 206; Croxall's Estate, 162 Pa. 579; Ezra Trim's

Estate, 168 Pa. 395; O'Donnell's Estate, 209 Pa. 63; Lowe's Estate, 326 Pa. 375.

The charity trust corpus will amount to $25,000, which added to the $4,000 to be in trust for the primary purpose of the charity trust means that the corpus total will be $29,000. Where the line is to be drawn between trust corpus for maintenance and trust corpus for the poor and needy in order to avoid a violation of the statute against accumulations, is a question presently not here for solution. In this connection see Dreisbach Estate, 384 Pa. 535 (not to be confused with Dreisbach Estate hereinbefore cited).

The contention of the Commonwealth is that a distinction must be made between maintenance of the mausoleum and the placing of flowers, plants, floral pieces and wreaths. We believe that the adornment of the lot is included as part of general maintenance and that no distinction should be made: see section 4(b)(2) of the Estates Act of 1947. . . .