# Nichols Estate.

*Wills—Probate—Issue devisavit vel non—Testamentary capacity
—Undue influence—Evidence.*

An order of the orphans' court, refusing an issue devisavit vel
non, will be sustained, where the appellate court, on examination
of the evidence, finds it sufficient to sustain findings by the lower
court that there was not sufficient evidence to indicate that the

deceased was not of sound mind, memory and understanding when the will was made, or that she was subjected to undue influence, and the paper itself indicates a proper disposition of the property.

Argued September 29, 1922. Appeal, No. 122, Oct. T., 1922, by Mary J. Smith et al., from decree of O. C. Venango Co., April T., 1921, No. 8, refusing to grant an issue devisavit vel non, in estate of Mary C. Nichols, deceased. Before MOSCHZISKER, C. J., FRAZER, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Appeal from register of wills. Before CRISWELL, P. J.

The opinion of the Supreme Court states the facts.

Issue d. v. n. refused. Mary J. Smith et al., children of decedent, appealed.

*Error assigned* was order, quoting record.

*Edmond C. Breene,* for appellants.

*John L. Nesbit,* with him *E. W. Criswell,* for appellees.

PER CURIAM, October 20, 1922:

This is an appeal from the refusal of the orphans' court to grant an issue d. v. n., and ordering the probate of a certain paper offered as the last will and testament of Mary C. Nichols, deceased.

The opinion of the court below states that the decedent "died December 4, 1920, aged about 76 or 77 years. She left surviving her, as heirs at law, one son and three daughters, viz: Harry S. Nichols, Mary J. Smith, Jennie Gertrude Weaver and Bessie Nichols or Bessie Lafeur, all of lawful age. On December 8, 1920, Harry S. Nichols, Mrs. Smith and Mrs. Weaver filed with the register a caveat against the probate of any......instrument ......pretending to be the last will and testament of the deceased. On the same day there was presented for probate a paper writing, purporting to be her......

will......, bearing date March 25, 1920. On December 20, 1920, the caveators caused objections to be filed thereto, wherein it is charged: (1st) 'That the said Mary C. Nichols at the time of the making of the said alleged will did not possess testamentary capacity;' (2d) 'That said alleged will was procured by undue influence and is not the will of Mary C. Nichols.' After hearing thereon it was, on January 10, 1921, adjudged by the register that the said paper writing was not the last will and testament of the said deceased, and probate thereof was refused. On January 24, 1921, there was presented for probate as the last will and testament of the said deceased a paper writing bearing date the 14th day of February, 1918. To this paper there appears to have been no specific objections filed, and nothing further was done thereon until April 5, 1921, when testimony of sundry witnesses on behalf of the proponents was taken before the court stenographer......On April 8, 1921, Mary J. Smith, one of the caveators referred to, presented to this court a petition under the 18th section of the Register of Wills Act of 1917, setting forth that, when the said will was made, the decedent was not of sound and disposing mind and memory and that the signature thereto was procured by the contrivance and undue influence of the said Bessie Nichols, or Bessie Lafeur, and therefore praying for an order directing the certification of the entire record into this court, which was accordingly done......Neither in the terms of the writing nor the testimony of the subscribing witnesses is there anything to indicate that, at the time of its execution, the deceased was not of sound and disposing mind, memory and understanding. On the contrary, the disposition made by her of her estate was such as, under the circumstances, would ordinarily be regarded as not an unreasonable one. Prior to the date thereof and about the year 1909, she had made a will largely, in substance, the same; therein she gave to her daughter Bessie the onefourth of her residuary estate, but placed the same in

trust and provided that the income only should be paid to her. The remaining three-fourths were to go to her other children. By the later will, now under consideration, after providing for the payment of debts and sundry bequests and the creation of a reserve fund to meet expense of repairs, she placed the whole of the residuary estate in trust with direction, chiefly, to pay the income therefrom to Bessie during her life with remainder at her death to her [the testatrix's] heirs."

At this point of its opinion, the court below fairly summarizes the evidence, pro and con, on the issues involved; but we deem it unnecessary to repeat the summary here. It is sufficient to say that a reading of the printed testimony has not convinced us of error in the conclusion reached by that tribunal that a lack of testamentary capacity had not been shown.

As to the allegation of undue influence, the court below correctly says: "There is no evidence that Bessie had anything to do with, or in any way influenced her mother in, the preparation of the will in question. She was present neither when directions were given for its preparation nor at its execution. She appears, however, to have had some knowledge of its contents later, was dissatisfied therewith and assisted her mother in the preparation of a later one bearing date March 25, 1920, which was rejected by the register, and its rejection acquiesced in by her."

The opinion concludes with the statements: "The paper itself witnesses the fact that the deceased knew and had in mind her kindred and those having claims upon her bounty; she remembered and named each one of her children; she remembered in a small but kindly way two sisters residing in the State of Ohio, [and] there is no evidence that there were others having claims upon her; [finally] she indicated to several persons rational grounds for the change she desired to make in the will she had theretofore made. From all the evidence it is apparent and clear that she knew at the

time of the execution of the paper what she was doing; knew what property she had, and, in a general way, its value; knew definitely, certainly and intelligently what she [was about] to do with it and how. it could be conserved and protected for the maintenance of the daughter whom she regarded as needing such protection." With these statements we agree.

The order appealed from is affirmed at the cost of appellant.