J-A16036-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF IRENE A. LONG, | : | IN THE SUPERIOR COURT OF |
| A/K/A IRENE LONG | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: MICHELE LEMMO | : | No. 1286 WDA 2015 |

Appeal from the Order July 20, 2015
in the Court of Common Pleas of Erie County
Orphans' Court at No(s): 139-2015

BEFORE:   SHOGAN, OLSON, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:   **FILED AUGUST 25, 2016**

Michele Lemmo (Lemmo) appeals from the order entered on July 20, 2015, which determined that the document allegedly executed by Irene A. Long (decedent) on March 2, 2015, was not a valid will and affirmed the appointment of Charlene A. Long (Charlene) as administatrix of Decedent's estate.  We affirm.

The certified record in this matter reveals the following facts. Decedent passed away on March 15, 2015, survived by three children, Charlene,[1]  Linda McLean (Linda), and Patrick Long (Patrick), and her granddaughter, Lemmo, with whom Decedent had lived for the eight months prior to her death.  Prior to her death, Decedent had been diagnosed with colon and uterine cancer.

---

[1] Charlene is Lemmo's aunt.

*Retired Senior Judge assigned to the Superior Court.

In the early months of 2015, Decedent allegedly executed two purported wills. The first, dated February 11, 2015 (February 11, 2015 Document), was a handwritten document which stated as follows.

> I, [Decedent,] on this day of Feb. 11, 2015, being of sound mind and body, make this my will and my final wishes. I make my granddaughter [] Lemmo and my daughter Charlene [] executresses [(*sic*)] of my entire estate. These two will be responsible for my son[] Patrick['s] needs and care.

> To my daughter, Linda [], I leave the total sum of $20.00 (twenty). If she contests my will, she doesn't get the $20.00.

> There is a life insurance policy through my place of employment, Carlisle. I name [Lemmo and Charlene] beneficiaries of such policy.

February 11, 2015 Document.

The February 11, 2015 Document appears to be signed by Decedent and witnessed by Charlene and Lemmo. Below all three signatures is the following note: "Executresses [(*sic*)] shall make all funeral arrangements to my wishes." ***Id.***

On or about March 1, 2015, Lemmo contacted the law offices of George Schroeck, Esquire[2] and spoke with paralegal Melissa Giles (Giles) regarding execution of a new will for Decedent. At Lemmo's request Giles drafted a new will for Decedent, dated March 2, 2015 (March 2, 2015

---

[2] Attorney Schroeck is representing Lemmo in the present action and appeared on her behalf at oral argument.

Document), using the February 11, 2015 Document as a template.[3] Giles testified at trial that she did not speak with Decedent prior to drafting the March 2, 2015 Document. Attorney Schroeck did not review the document.

On March 2, 2015, Giles brought the March 2, 2015 Document to Lemmo's home for execution. Also present at the home were Decedent, Lemmo, Charlene, Kathy Flynn (Flynn), and Michael Goetz (Goetz). Flynn and Goetz witnessed the March 2, 2015 Document and Giles notarized it.[4, 5]

Following Decedent's death on March 15, 2015, Linda and Patrick renounced their rights to administer the Estate. On April 23, 2015, Charlene filed a petition for probate and grant of letters testamentary. This request was granted by decree on April 23, 2015.

On May 22, 2015, Lemmo filed the March 2, 2015 Document, along with a petition for probate and grant of letters testamentary. On June 1, 2015, Charlene filed a petition seeking to invalidate the March 2, 2015 Document. In that petition, Charlene alleged that on March 2, 2015,

---

[3] The March 2, 2015 Document substantially conforms to the terms of the February 11, 2015 Document, except with respect to the inheritance of Linda. While the February 11, 2015 Document left Linda twenty dollars (payable only if the purported will was not contested), the March 2, 2015 Document contains no such provision.

[4] Charlene chose the witnesses: Flynn is her life partner and Goetz is her boss.

[5] The orphans' court recognized that this case raises issues concerning the unauthorized practice of law. Orphans' Court Opinion, 10/12/2015, at 3. We trust that those concerns have been referred to the appropriate authorities.

Decedent was not in the physical or mental state necessary to execute a will. Charlene claimed that Lemmo had manipulated Decedent's hand to get her to sign the March 2, 2015 Document and had signed Decedent's name to the February 11, 2015 Document when she was unable to get Decedent to sign it.

On July 20, 2015, a hearing was held, after which the orphan's court determined that the March 2, 2015 Document was not a valid will. On August 19, 2015, Lemmo filed a notice of appeal.[6] Both Lemmo and the orphans' court complied with the mandates of Pa.R.A.P. 1925.

Lemmo raises the following issues for our review.

1. Did the [orphans' court] commit an abuse of discretion and/or an error of law when it failed to apply case law, specifically where [Charlene] presented no credible evidence that [Decedent], who suffered from metastatic carcinoma and took pain medication, was "*non compos mentis*," in light of the fact [that Decedent] had signed a similar hand-written will the previous month, which showed the same general intent regarding legatees?

2. Did the [orphans' court] commit an abuse of discretion and/or an error of law in finding that [Decedent] was not a capable and competent individual, where no credible medical

---

[6] Lemmo failed to serve her notice of appeal on the orphans' court in violation of Pa.R.A.P. 906(a)(2). However, because the orphan's court considered the issues Lemmo now raises before us, we decline to quash this appeal. **See** Pa.R.A.P. 902 ("Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is subject to such action as the appellate court deems appropriate, which may include, but is not limited to, remand of the matter to the lower court so that the omitted procedural step may be taken."); **Meadows v. Goodman**, 993 A.2d 912, 914 (Pa. Super. 2010).

testimony or evidence was presented that evidenced [Decedent] was unaware of her actions, specifically where [Decedent] was question by a notary public as to whether she understood the subject will and its intentions, and [Decedent] acknowledged that she did?

3. Did the [orphans' court] commit an abuse of discretion and/or an error of law in finding that the will was not a valid will properly executed by a capable and competent individual, where the will was witnessed by two individuals who signed sworn statements that they had witnessed [Decedent] sign the will?

4. Did the [orphans' court] commit an abuse of discretion and/or an error of law in failing to apply controlling precedent of case law and statutory law to the facts of this case?

Lemmo's Brief at 2-3 (unnecessary parentheticals omitted).

Our standard of review of the findings of an orphans' court is deferential. When reviewing a decree entered by the orphans' court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the orphans' court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.

However, we are not constrained to give the same deference to any resulting legal conclusions. [T]he orphans' court decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law.

*In re Estate of Whitley*, 50 A.3d 203, 206–07 (Pa. Super. 2012) (internal citations, quotation marks, and unnecessary capitalization omitted).

In her first issue, Lemmo argues that the orphans' court erred in determining that Decedent was not capable or competent to execute the

- 5 -

March 2, 2015 Document where Decedent had signed a similar document on February 11, 2015. Appellant's Brief at 14-21.[7]

The Probate, Estates and Fiduciary Code provides that "[a]ny person 18 or more years of age who is of sound mind may make a will." 20 Pa.C.S. § 2501.

> Testamentary capacity exists when the testator has intelligent knowledge of the natural objects of his bounty, the general composition of his estate, and what he or she wants done with it, even if his memory is impaired by age or disease. Neither old age, nor its infirmities, including untidy habits, partial loss of memory, inability to recognize acquaintances, and incoherent speech, will deprive a person of the right to dispose of his own property.
>
> In determining testamentary capacity, a greater degree of proof of mental incapacity is required than would be necessary to show the inability to conduct one's business affairs. Finally, testamentary capacity is to be ascertained as of the date of execution of the contested document.

*In re Estate of Smaling*, 80 A.3d 485, 494 (Pa. Super. 2013) (citations and quotation marks omitted).

> A previous will executed by the testator who was admittedly of sound mind is admissible upon the theory that such a will tends to show the fixed and settled purpose of the testator, and any sudden change in such purpose without adequate cause may be evidence from which an unsound mind may be inferred.

*Burns v. Kabboul*, 595 A.2d 1153, 1162 (Pa. Super. 1991) (citations omitted).

---

[7] We note with displeasure that the argument section of Lemmo's brief fails to divide her argument into sections corresponding to the issues raised in her statement of questions involved in violation of Pa.R.A.P. 2119(a).

Instantly, the orphans' court rejected Lemmo's arguments, finding that that Lemmo, and not Decedent, had hand written the February 11, 2015 Document, which Lemmo then signed, both on Decedent's behalf and as a witness, rendering that document invalid. Orphans' Court Opinion, 10/12/2015, at 8. Thus, the court determined that the earlier document could not be used to demonstrate the validity of the March 2, 2015 Document.

With respect to the February 11, 2015 Document, Lemmo testified that she had a conversation with Decedent and Charlene about the terms of the document prior to drafting it. N.T., 7/20/2015, at 20. Lemmo stated that Decedent was "very coherent" at the time of this conversation. *Id.* at 21. However, Charlene testified that, prior to February 11, 2015, Decedent had indicated that she did not want a will. *Id.* at 84.

Charlene testified that she had fallen asleep in a chair at Lemmo's home one evening and awoke around 11:00 pm to find Lemmo "writing in the dark." *Id.* at 74. When questioned, Lemmo told Charlene she was writing Decedent's will. Charlene testified that she and Lemmo signed page two of the February 11, 2015 Document, but that Decedent did not sign the document to her knowledge or in her presence. *Id.*

Lemmo testified that Decedent discussed coherently the terms of the February 11, 2015 Document with Lemmo and Charlene. However, hospice

records, introduced at trial through Karen Moski, executive director of Hospice of Metropolitan Erie, indicated that Decedent requested admission into hospice on or about February 12, 2015. At that time, Decedent described her pain as excruciating. Prior to her admission to hospice, Decedent had been prescribed a regimen of pain management drugs, including MS Contin (later changed to Fentanyl) and liquid morphine, which are "narcotics that would impair cognitive abilities." N.T., 7/20/2015, 63-64. Hospice records admitted at trial noted that Decedent "would benefit from pain control" and indicated that the medications previously prescribed would be continued and/or increased at the order of Decedent's treating physician.

Elaine Dombrowski (Dombrowski), a nurse manager at hospice, testified that Decedent was prescribed what medical professionals would consider to be "high doses" of her pain medication. *Id.* at 64. Dombrowski also testified that hospice had encountered problems related to the administration of Decedent's in-home pain medication by Lemmo.

Decedent was involved in hospice from February 12 through March 3, 2015. She was ultimately discharged when hospice determined that it could not accurately monitor the in-home medication, including the morphine and Fentanyl, administered to Decedent. The notes created by hospice also indicate that (1) hospice workers had a difficult time contacting Lemmo during Decedent's time in the program, and (2) Decedent was often

unresponsive when hospice workers were performing wellness checks. Christine Flannigan, the Community Relations Manager who conducted Decedent's hospice exit interview on March 3, 2015, testified that Decedent was tired and not responsive. *Id.* at 71.

The law is clear that a testator must have intelligent knowledge of her estate and what she wants to do with it at the time the will is executed. *Smaling*, 80 A.3d 494. Moreover, we are cognizant that

> [i]f the testator is unable to sign his name or to make his mark for any reason, a will to which his name is subscribed in his presence and by his express direction shall be as valid as though he had signed his name thereto: **Provided, That he declares the instrument to be his will in the presence of two witnesses who sign their names to it in his presence**.

20 Pa.C.S. § 2502(3) (emphasis added).

Based on our review of the record, we find no error in the orphans' court's determination that the Decedent lacked testamentary capacity to execute a will on February 11, 2015. Charlene testified that Decedent did not want a will, was taking high doses of medication, and was being evaluated for admission to hospice at the time the February 11, 2015 Document was signed. Additionally, Charlene's testimony that, contrary to what her signature on the February 11, 2015 Document would indicate, she did not witness Decedent sign the document, supports the orphans' court's determination that the February 11, 2015 Document was not a valid will. Accordingly, we agree with the orphans' court that the February 11, 2015

Document cannot support Lemmo's claim that the March 2, 2015 Document is valid. ***Burns, supra.***

In her second issue, Lemmo argues that the orphan's court erred in determining that Decedent was not capable or competent to execute the March 2, 2015 Document because Charlene failed to present credible medical testimony to contradict that of Giles and Lemmo, who claimed that Decedent understood the March 2, 2015 Document and its ramifications. Appellant's Brief at 14-21.

We note that Lemmo does not challenge the admission of the Hospice notes. Those notes indicate that Decedent was suffering from excruciating pain, which was being inconsistently treated using high doses of narcotic medication, and, as a result of her medical condition and treatment, Decedent was often tired and non-responsive.

Further, Giles testified that when she arrived at Lemmo's home, Decedent was in a hospital bed watching television. Her eyes were open, but would close occasionally. Giles indicated that, when responding to Giles' questions regarding the March 2, 2015 Document, Decedent "may have made a sound first, at which point, I repeated by question and I would repeat it until either she said 'yes' or 'no.' She never said 'no.'" N.T., 7/20/2015, at 14. Giles testified that while Decedent signed all four pages of the March 2, 2015 Document, she was incapable of holding her arm up

and dropped the pen several times. Lemmo had to hold Decedent's arm for her to sign. Giles did not inquire as to Decedent's medical condition or what medications Decedent was taking, nor did she contact Decedent's treating physician for an opinion as to Decedent's competency. Further, Giles testified that she knew hospice had recently been fired and assumed Decedent was close to the end of her life.

It is well-settled that "courts evaluate testamentary capacity on the date of the execution of the contested will. Evidence of such state of mind may be received for a reasonable time before and after execution as reflective of decedent's testamentary capacity. This information can be supplied by lay witnesses as well as experts." **In re Estate of Nalaschi**, 90 A.3d 8, 12–13 (Pa. Super. 2014). Contrary to Lemmo's argument, Charlene was not required to admit additional medical evidence. However, instead of corroborating Lemmo's claims that Decedent was lucid at the time the March 2, 2015 Document was executed, the testimony of Giles supports the observations of the hospice employees who noted that Decedent was often unresponsive. Moreover, as fact-finder, the orphans' court was free to believe all, part, or none of the evidence presented. **See In re Bosley**, 26 A.3d 1104, 1107 (Pa. Super. 2011). We find no abuse of discretion.

Lemmo next argues that the orphans' court erred in determining the March 2, 2015 Document is invalid because Flynn and Goetz averred that they had witnessed Decedent sign the document. Lemmo's Brief at 19.

At trial, Flynn testified that at the time the March 2, 2015 Document was signed, Decedent was "pretty well out of it. She wasn't coherent all the time and you really had to work on her to get answers or anything out of her. Usually it was like an 'uh.'" N.T., 7/20/2015, at 87. Flynn indicated that Decedent dropped the pen when it was placed in her hand and that Lemmo had to help her sign. She noted that Lemmo was supposed to provide "a light[] assist, but there was just no way [Decedent] could hold the pen." *Id.* at 88.

Goetz's testimony corroborated Flynn's assessment that Decedent was "pretty drugged" on March 2, 2015, but testified that she made eye contact with him and that she could make a mark on the page, which he believed was acceptable under the instructions Giles provided for execution of the Document. *Id.* at 92. However, he indicated that Lemmo was "holding [Decedent's] hand." *Id.* Importantly, Goetz testified that after the signing he expressed concern to the other witnesses because he "expect[ed] a little bit more positive communication" from Decedent. *Id.* at 94. He reiterated on cross-examination that he did witness Decedent sign her name to the March 2, 2015 Document. *Id.* at 95.

We are cognizant that

> [i]f one **having testamentary capacity**, is unable from palsy or other cause to steady his hand so as to make to his will the signature required by law, another person may hold his hand and aid him in so doing; and it is not necessary to prove any express request from the testator for such assistance. The act is his own with the assistance of another, and not the act of another under authority from him.

*In re Milleman's Estate*, 203 A.2d 202, 209 (Pa. 1964) (emphasis added).

The orphans' court's opinion demonstrates that it considered the testimony presented by Flynn and Goetz, but still found that Decedent lacked testamentary capacity to execute a will on March 2, 2015, rendering her assisted signature invalid. Based on our review of the record, we find no abuse of discretion in this determination.

Finally, Lemmo claims that the court erred in "failing to apply controlling precedent of case law and statutory law to the facts of this case." Lemmo's Brief at 3. However, in her argument section, she fails to detail specifically which precedent the court overlooked. This Court has repeatedly held that "failure to develop an argument with citation to, and analysis of, relevant authority waives that issue on review." *In re Estate of Schumacher*, 133 A.3d 45, 51 (Pa. Super. 2016). Accordingly, we hold that this claim is waived.

Based on the foregoing, we hold that the orphans' court properly granted Charlene's petition to invalidate the March 2, 2015 Document. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: <u>8/25/2016</u>