## Wagner's Estate.

*Wills—Probate—Setting aside will—Appeal—Failure of beneficiary to except.*

1. Where a beneficiary in a will, the probate of which has been set aside, fails to except to the action of the court, he cannot appeal from the decree.

*Wills—Probate—Fraud—Undue influence—Testamentary incapacity—Findings of fact.*

2. Findings of fact by the orphans' court that a will was procured by undue influence while the testatrix lacked testamentary capacity, will not be reversed in the absence of clear error.

3. In considering an appeal from the register of wills admitting a will to probate, the orphans' court must pass upon the facts, and either dismiss the petition, grant an issue in case of substantial dispute, or set aside the probate. The latter course will be followed when, in good conscience, a verdict of a jury sustaining it, could not be approved.

4. If it appears that testamentary incapacity and undue influence destroyed the free agency of the testatrix at the time and in the very act of making the testament, the whole writing must be discarded.

Argued March 17, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART, SADLER and SCHAFFER, JJ.

Appeals, Nos. 75 and 89, March T., 1927, by Charles Wagner and Amelia Hoover, legatees, from decree of

O. C. Allegheny Co., June T., 1926, No. 700, sustaining appeal from register of wills and setting aside probate of will, in estate of Rosina Wagner, deceased. Affirmed.

Appeal from register of wills. Before MILLER, P. J.

The opinion of the Supreme Court states the facts.

Appeal sustained and probate of will set aside. Charles Wagner and Amelia Hoover, legatees, appealed.

*Error assigned* was decree, quoting record.

*Albert C. Hirsch,* with him *Albert G. Liddell* and *Watson & Freeman,* for appellants.—There is no allegation in the pleadings and no testimony in the record that either Charles Wagner or Mrs. Hoover influenced testatrix in any particular. Nor is there any evidence tending to show that the bequests to them were not the deliberate will of testatrix; the court's decree setting aside the entire will is therefore erroneous; only the provision for Barach should have been eliminated: Lawrence's Est., 286 Pa. 58; Ahlberg v. Gurley, 284 Pa. 491; Buechley's Est., 278 Pa. 227; Tyson's Est., 223 Pa. 596; Trost v. Dingler, 118 Pa. 259; Masterson v. Berndt, 207 Pa. 284.

The law of Pennsylvania and numerous other states is well settled that when a legacy has been given through undue influence, it does not necessarily render the entire will void, but only so much thereof as was thus procured: Steadman v. Steadman, 14 Atl. 406; Widdowson's App., 189 Pa. 338; Cuthbertson's App., 97 Pa. 163, 173; Griffin's Est., 9 Pa. Dist. R. 248.

*Waldo P. Breeden,* with him *John F. Gloeckner,* for appellees.—The burden is on the beneficiaries as well as upon the scrivener of showing that it was drawn as directed by testatrix: Blume v. Hartman, 115 Pa. 32.

The whole will was tainted by the provision for the scrivener.

OPINION BY MR. JUSTICE SADLER, April 11, 1927:

Rosina Wagner, a widow, aged about 80 years, died on June 12, 1925. She was survived by four children, a son, who had been absent and unheard of for a long period of time, Joseph, Charles, and a daughter, Mrs. Hoover. For many years prior thereto her business had been conducted by Joseph, who had access to a deposit box in which her securities were kept, and who held a power of attorney permitting him to transact banking business, sell bonds or stocks, and reinvest funds received. He acted in this capacity until within a few months of her death, and his authority was not revoked until May 13, 1925. Barach, a disbarred attorney, became acquainted with the deceased, through the son, Charles, and, for two or three months prior to the making of the will now in controversy, was assiduous in his attentions to Mrs. Wagner. According to his testimony, he had performed some slight professional service for her some five or six years previously.

On May 8, 1925, Joseph, then residing at home, was removed to an asylum as a feeble-minded person, apparently on the petition of his brother Charles, or his sister. This is not clear, since the proceedings are not made a part of the record. The following evening, Barach appeared with a paper which was presented to Mrs. Wagner, either while she was in bed, or sitting up in a chair. Her signature was affixed to the document now in controversy with the manual aid of Barach. By the weight of the evidence, it was shown that the will was not read, or at least that provision by which one-fourth of the estate was given to the attorney. The court was justified in finding that the paper was folded up when presented for signature, and not examined before execution, though one subscribing witness, who had been called in, and the son Charles, as well as Barach, and his wife, who had accompanied him to the sick woman's room, testified to the contrary. The learned court below found that "the weight of the credible evi-

dence on this point is that the contents of this will were not fully explained to the testatrix and that she did not understand the purport thereof when she executed it." The attending physician at the time, who was present nearly every day from April 27 to June 12, stated that the deceased was not of sound and disposing mind, or mentally responsible.

The weight of the evidence shows Barach took the will away, when signed, and produced it after the death. By its terms, the sons Albert and Joseph, the latter having been her companion and the one who had attended to his mother's business for years until a few months before her death, when she was given the impression that he had been unfaithful to his trust in money matters, were each given $100 as their share of an estate variously estimated to be of the value of from $35,000 to $60,000. Barach was named executor, and given one-fourth of the entire property, real and personal, and the balance divided between Charles and Mrs. Hoover.

After the will was signed, Barach presented a second paper to Mrs. Wagner, which, the court has found, was not comprehended by her, even if read, which writing she also signed. This document appointed him trustee of all the property, with the right to manage the same during her lifetime, receiving all income and deposits in bank, with a power to sell and convey. By its terms, Mrs. Wagner was permitted to occupy so much of the house in which she had for years resided as the trustee might deem necessary, and be provided with such funds for maintenance as the trustee might think proper. The balance remaining at her death was to be divided as she should direct by will, and for these services Barach was to receive one-fourth of all her assets. He therefore claimed a right to this share as trustee, as well as to one-fourth of the remainder under the terms of the will executed the same evening. Four days later another paper was signed by which the previous power of attorney

given to Joseph was revoked, and the right to enter the safe deposit box withdrawn from the son and lodged in Barach. Possession of all the property, real and personal, was then taken by him.

After the death of Mrs. Wagner, Barach had the daughter and Charles appear in a lawyer's office, and threatened, according to the testimony of the former, if they did not declare their mother was of sound mind and capable of making disposition of her property, that they both would get into trouble. On the stand, Mrs. Hoover repudiated the statement which she had made on that occasion. It will be observed at this point that both parties admittedly consulted another attorney, proposing to contest the will, and Charles at the time told Mr. Liddell, the counsel, quoting the testimony of the last named: "He said that Mr. Barach had been introduced to his mother but a short time before the making of the will, didn't know his mother very well, hadn't done any business for her, that the will was signed by his mother but was not read to [her]; but that certain portions of the will had been stated to him and his sister, Mr. Hoover and others in the room, that $100 was to be given two of the children and the balance was to be divided, but he had heard no mention of twenty-five per cent or any per cent going to Mr. Barach; that when the will was signed it was turned over in some way so that the mother could only see a portion of it; [she] did not read the will. I think that is about the essence of what he said." At that time Mrs. Hoover, Mr. Hoover, Marie Hoover, and Charles Wagner were in the office. Having been advised that they would receive less if the writing was set aside, they abandoned their proposed action. Charles could not remember the conversation, but agreed that the thought of contest was abandoned for the reason stated.

The will was probated by the register on June 17, 1925, and an appeal from his action perfected. A petition was then presented to the orphans' court by the

guardian of Joseph, averring the deceased "was not of sound and disposing memory and understanding, and wholly without testamentary capacity, and by reason of long continued illness and unsoundness and feebleness of mind was wholly incapable of knowing and appreciating the nature, effect or consequences of the act of making a will, or comprehending the property she possessed." It was further charged that the will had been secured by Barach, who stood in a confidential relation, by the use of undue influence. The court was asked to sustain the appeal and set aside the probate, and direct that the letters testamentary granted be revoked. Mrs. Hoover filed an answer to the citation issued in which it was stated she had read the petition, that the averments contained therein were true, and joined in the request that the probate be set aside. Barach and Charles filed answers denying the charges made. Voluminous testimony was taken, and an opinion filed, approved by the court in banc, sustaining the appeal. It was found both that the will had been obtained by undue influence, and the contents not made known to the testatrix, and, further, in effect, that she lacked testamentary capacity. Charles filed no exceptions to the decree and has no standing here (Russo v. Sharpsburg Boro., 279 Pa. 192; Hill v. Egan, 160 Pa. 119), and his appeal must be quashed: Beatty v. Harris, 205 Pa. 377. Nor did Mrs. Hoover make formal objection within the time allowed (Equity Rules Nos. 69 and 70; Mylin's Est., 7 Watts 64), but as the court had her exceptions before it when it entered the final order, we will consider the appeal taken on her behalf. Barach also appealed, but has discontinued his request for a review.

The court below found on sufficient testimony not only that the will was secured by the exercise of undue influence by Barach, but also that testatrix lacked testamentary capacity, and did not know the contents of the paper which she signed, and was incapable of making an intelligent disposition of her property. The court in

banc, in overruling the exceptions filed to the decree nisi, held that she was "unduly influenced by Barach and those of her family whom he dominated, resulting in a rich harvest to himself, and undue benefits to them," and this constituted "a fraud against the testatrix not sustainable under the facts or under the law." Findings of fact are not to be reversed in the absence of clear error, and we find none in the conclusions reached: McCullough's Est., 287 Pa. 580; Bearmer's App., 126 Pa. 77.

In considering a case such as this on appeal from probate, the trial judge as chancellor must pass upon the facts, and either dismiss the petition, grant an issue in case of a substantial dispute, or set aside the probate. The latter course will be followed when, in good conscience, a verdict of a jury, sustaining the will, could not be approved. The applicable rule has been thus stated in a recent case: "When the action of the trial court was based on a consideration of the evidence, the propriety of such action is to be judged, or tested, by the answer to the following inquiry: In view of the relevant rules of law applicable to the particular case, is it conceivable a judicial mind,—desiring only to arrive at the truth and do exact justice,—could, on due consideration of the evidence as a whole, reasonably have reached the conclusion of the court below? When the answer to this question is in the affirmative, the judgment appealed from will not be disturbed": Tetlow's Est., 269 Pa. 486, 495; Phillip's Est., 244 Pa. 35. "The right to an issue under the statute depends upon whether there is a substantial dispute upon a material matter of fact, and, unless there is, the proponent is no more entitled to an issue on a question of forgery [or other legal ground] than is the contestant on a question of testamentary capacity. The statute does not confine the dispute to any particular question": Fleming's Est., 265 Pa. 399, 407. The Register of Wills Act of June 7, 1917, P. L. 415,

has not altered these rules: Fleming's Est., 280 Pa. 252;
Cross's Est., 278 Pa. 170.

It is however insisted on behalf of Amelia Hoover, appellant, that the will of Mrs. Wagner was effective, except as to the provision for Barach, the confidential adviser, whose conduct in securing its execution is not defended. It may be that some parts of a will can at times be sustained, though others are void because of improper conduct shown to have been exercised in securing their insertion. As was said by the court in Cuthbertson's App., 97 Pa. 163, 173, "There may be a case where the alleged undue influence is applicable only to a single independent provision in a will, and that provision may fail, leaving the rest of the will to stand. It is certainly not this case, where the clause objected to is a residue, and that residue made up or largely increased by alterations made, as a jury may conclude, under the same influence for that purpose." "According to the authorities, undue influence may be exercised either through threats or fraud; but however used it must, in order to avoid a will, destroy the free agency of the testator at the time and in the very act of making the testament": Trost v. Dingler, 118 Pa. 259, 269. The learned court below has found that Mrs. Wagner did not comprehend what she was doing when the will was signed, and was without testamentary capacity.

In Steadman v. Steadman, 10 Sad. 539, 542, cited by appellant in support of the proposition advanced, the jury was instructed, in part, "If the defendant has satisfied you, by the weight of the evidence, that the will was procured to be made by some fraud practised, some threats, or misrepresentations, some undue flattery, or some physical or moral coercion employed, so as to destroy the free will or the free agency of the testator; and that these influences, or some of them, were so operative as to destroy the free will of the testator at the time of making the will, and thus induce him to make the will

differently from what he really wished to make it," the whole writing must be discarded.

In the case at bar the court did not rest its finding solely on the exercise of undue influence by Barach, but has concluded that the securing of the will amounted to a fraud, that the contents of the paper were not made known to testatrix, and the paper executed did not represent a voluntary disposition of her property. Further, it determined that she lacked testamentary capacity, a fact which seems to have been disregarded by counsel for appellant. In addition, it must be kept in mind that appellant joined in the present contest, and, in her answer, set forth that all of the matters above referred to were true, and her testimony at the hearing was to like effect.

After a careful review of all the evidence, we are convinced a proper conclusion was reached below, and the assignments of error are overruled.

The decree of the court to No. 75, March Term, 1927, in which Amelia Hoover is appellant, is affirmed at her costs; and the appeal of Charles Wagner, entered to No. 89, March Term, 1927, is dismissed.