J. S58010/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

IN RE:  ESTATE OF:  GLADYS M. REED,  :     IN THE SUPERIOR COURT OF
DECEASED                      :          PENNSYLVANIA
                                       :
APPEAL OF:  JANET REED          :        No. 2054 MDA 2016

Appeal from the Order Entered November 22, 2016,
in the Court of Common Pleas of Northumberland County
Orphans' Court Division at No. OC-2012-0064

BEFORE:  GANTMAN, P.J., SHOGAN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:     **FILED NOVEMBER 21, 2017**

Janet Reed appeals the order of the Court of Common Pleas of Northumberland County Orphan's Court Division that denied appellant's petition to show cause why her appeal from the decree of the Register of Wills admitting will to probate should not be sustained to permit the Register of Wills to receive and act upon an earlier will.  After careful review, we affirm.

Appellant alleged in her petition that decedent executed a last will and testament on November 28, 2007, which left the majority of her estate to her four children, Donald R. Reed ("D. Reed"), Barbara A. Treibley ("Treibley"), Richard R. Reed ("R. Reed") (collectively, "appellees"), and appellant.  On April 17, 2012, decedent executed a new will only hours before her death in which she left the majority of her estate to appellees.

Those three were named executors when the will was admitted to probate on April 25, 2012.

On May 11, 2012, appellant appealed from the Register of Wills' decree admitting the April 17, 2012 decree to probate. Appellant alleged that at the time of the execution of the will, decedent's physical and mental condition was greatly impaired by sickness and infirmity such that she was not a person of sound mind capable of disposing of her estate by will. Appellant also alleged that the writing was procured by fraud in the inducement, undue influence, duress, and constraint practiced upon decedent by her siblings, D. Reed, Treibley, and R. Reed.

On May 17, 2012, the trial court issued a citation to show cause why the appeal should not be sustained. On December 6, 2012, the trial court sustained in part preliminary objections filed by appellees and dismissed appellant's petition without prejudice.

On December 26, 2012, appellant filed a first amended petition. Essentially, appellant contested the will of her mother, Gladys M. Reed ("decedent"), submitted to the Register of Wills of Northumberland County and asked that it be set aside based upon lack of mental capacity, undue influence, and fraud. This time the petition was divided into four counts. In Count 1, appellant alleged that decedent lacked testamentary capacity to execute a new will, the new will should be set aside, and that the will dated November 28, 2007, should be used as the will of the decedent. In Count 2,

appellant alleged that the undue influence of D. Reed and R. Reed led decedent to execute the April 17, 2012 will. In Count 3, appellant alleged that the undue influence of Treibley led decedent to execute the April 17, 2012 will. In Count 4, appellant alleged that her three siblings committed fraud by making statements to decedent that appellant allegedly stole everything that decedent owned and/or stole certain property from decedent.

Appellees answered and denied the material allegations of the petition. As new matter, appellees alleged that appellant had unclean hands because appellant used her power of attorney to effectuate a transfer and taking of a deed, transferring the sum of $19,360.72 from decedent's checking account into a Medical Escrow Account, transferring the sum of $140,161.74 from Certificates of Deposit owned by decedent into the Janet E. Reed Medical Escrow account, and transferring the sum of $4,360.72 from decedent's checking account to the Janet E Reed Medical Escrow Account. Additionally, appellees alleged that appellant entered decedent's safe deposit box on March 13, 2012, and removed all of decedent's certificates of deposit, annuity contracts, deeds, and other items showing indicia of ownership of decedent's assets. According to appellees, appellant made these transfers after decedent informed her that decedent wanted to terminate the power of attorney.

Appellant replied and asserted that appellant made the transfers under the mistaken belief that she was preserving decedent's assets by protecting them from the nursing home and that she returned them to decedent prior to decedent's death.

On June 18, 2015, appellees moved for summary judgment and alleged that deposition testimony of decedent's doctor and the appellees as well as witnesses to the April 17, 2012 will that decedent was of sound mind and capacity when she executed the 2012 will. Appellees also asserted that appellant failed to establish any undue influence. On September 24, 2015, the trial court denied the motion for summary judgment.

On November 22, 2016, after conducting a hearing and accepting proposed findings of facts from both parties, the trial court issued the following relevant findings of fact and conclusions of law:

**Findings of Fact**:

. . . .

3. In August of 2005, [appellant], the youngest child of the [d]ecedent, was appointed as the Power of Attorney for the [d]ecedent.

4. The [d]ecedent, while living, executed a Last Will and Testament on November 28th 2007.

5. On February 22nd 2012, the [d]ecedent broke her leg and was admitted to the hospital.

6. Prior to this date, the [d]ecedent had handled her own financial affairs with competency.

7. Decedent was discharged from the hospital on or about March 5th 2012 and was admitted to a nursing home in Watsontown.

8. Following admission of the [d]ecedent to the hospital, [appellant] began to utilize the Power of Attorney to take over management of her mother's financial affairs.

9. On or about March 11th 2012, [d]ecedent executed a handwritten Revocation of Power of Attorney prepared by [R.] Reed.

10. On or about March 13th 2012, [appellant] began transferring assets of the [d]ecedent into her own name, including the [d]ecedent's house, car, and assorted financial properties (i.e. bank accounts, annuity contracts, and certificates of deposit)[.]

11. [Appellant] testified that she did these things under the mistaken belief that she was protecting her Mother's assets from the nursing home.

12. [R.] Reed testified that [appellant] phoned him the day following the Revocation of the Power of Attorney execution and sarcastically congratulated him on becoming the Power of Attorney.

13. [Appellant] testified she never saw the Revocation and was not advised of the same by the [d]ecedent.

14. [Appellant] did not consult with an attorney prior to transferring the [d]ecedent's assets.

15. Several items of personal property of the [d]ecedent went missing following inspection of the residence by [R. Reed] and [D. Reed], [appellant] testified that these were gifts to her from her mother.

16. The [d]ecedent was admitted to the hospital from April 4th to April 7th of 2012.

17. She was sent back to the nursing home on April 7th and then re-admitted to the hospital on April 9th 2012.

18. During her time at the hospital, the [d]ecedent suffered from shortness of breath, congestive heart failure, and severe pulmonary hypertension (April 4th to April 7th 2012) and pneumonia requiring mechanical ventilation and endotracheal intubation and hypercapnia which is increased levels of carbon dioxide in the blood and can cause confusion (April 9th to April 16th 2012).

19. [Appellant] was able to see her mother on April 4th and April 8th of 2012. On April 8th, she was escorted out of the hospital by a social worker because of her mother's desire not to see her.

20. [Appellant] was prevented from seeing her mother by the hospital on April 12th, April 13th, and April 16th 2012.

21. The hospital was acting on direction of [R.] Reed the newly appointed Power of Attorney of the [d]ecedent.

22. [Appellant] testified that her mother never told her she didn't want to see her.

23. [Appellees] testified that they believed their mother did not want to see [appellant].

. . . .

25. Decedent, having been advised of the continued transferring of assets from her name by [appellees], was prompted to take action to change her Will.

26.    [R. Reed and D. Reed] contacted the estate attorney, presumably at the behest of the [d]ecedent, and directed that a new Power of Attorney and a codicil to the [d]ecedent's will be drafted.

27.    Nursing notes from April 17th 2012 indicated that [d]ecedent was not sure where she was and had difficulty with orientation questions.

28.    The estate attorney met with the [d]ecedent on the evening of April 17th 2012 to review the new Power of Attorney and the codicil.

29.    The estate attorney indicated that [d]ecedent appeared lucid and well-reasoned during the execution of the documents.

30.    Said documents were executed by [d]ecedent on that date at 5:00 p.m.

31.    Decedent passed away at approximately 8:00 a.m. on April 18th 2012.

32.    The Last Will and Testament of [d]ecedent was admitted to probate on April 25th 2012.

. . . .

34.    A compulsory nonsuit was granted as to the claims of lack of testamentary capacity and fraud.

35.    A prima facie case of the elements of undue influence was established at trial, sufficient to rebut the previously arisen presumption of proper execution of the will dated April 17th 2012.

36.    [Appellees] then present[ed] clear and convincing evidence of the absence of undue influence.

Order, 11/22/16 at 1-4, Findings of Fact Nos. 3-23, 25-32, and 34-36.

On November 22, 2016, the trial court denied the petition contesting the will on the basis that appellees proved by clear and convincing evidence that undue influence did not exist at the time of execution of the will on April 17, 2012. The trial court granted a compulsory non-suit on the allegations of lack of testamentary capacity and fraud.

Appellant filed a notice of appeal on December 13, 2016. The trial court ordered appellant to prepare a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On December 29, 2016, appellant complied with the order and filed a statement of errors complained of on appeal. On April 21, 2017, the trial court issued an order in lieu of opinion pursuant to Pa.R.A.P. 1925(a).

Appellant raises the following issues for this court's review:

1. Whether the trial court abused its discretion and/or committed an error of law in failing to set aside the Will executed by [d]ecedent, [], on the grounds of undue influence?

2. Whether the trial court abused its discretion and/or committed an error of law in finding that [appellees] presented clear and convincing evidence of the absence of undue influence?

3. Did the trial court abuse its discretion and/or commit an error of law in granting a compulsory non-suit in favor of [a]ppellees on [a]ppellant's claim of lack of testamentary capacity?

4. Did the trial court abuse its discretion and/or commit an error of law in granting a compulsory non-suit in favor of [a]ppellees on [a]ppellant's claim of fraud?

Appellant's brief at 4-5.

> On appeal from the Register of Wills' decree admitting a will to probate, the Orphans' court must consider the facts presented and "either dismiss the petition, grant an issue in case of a substantial dispute, or set aside the probate." ***Wagner's Estate****,* 289 Pa. 361, 367, 137 A. 616, 618 (1927). With respect to this Court's standard and scope of appellate review in will contests, the Orphans' court decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law. ***In re Elias' Estate****,* 429 Pa. 314, 239 A.2d 393 (1968). ***See also In re Estate of Presutti****,* 783 A.2d 803 (Pa.Super. 2001). If the record supports the court's factual findings, we will defer to these findings and will not reverse absent an abuse of discretion. ***In re Estate of Blumenthal****,* 812 A.2d 1279, 1286 (Pa.Super. 2002). We are not constrained, however, to give the same deference to the court's legal conclusions. ***Id.***

***In re Estate of Luongo***, 823 A.2d 942, 951 (Pa.Super. 2003) (footnote omitted).

Initially, appellant argues that the trial court abused its discretion and/or committed an error of law when it failed to set aside the April 17, 2012 will of decedent on grounds of undue influence.

> A presumption of validity arises once a will is probated, and the burden shifts to the contestant to prove undue influence. ***In re Clark's Estate****,* [334 A.2d 628 (Pa. 1975)]*; **Estate of Angle****,* 777 A.2d 114 (Pa.Super.2001); ***Burns*** [***v. Kabboul***, 595 A.2d 1153 (Pa.Super. 1991)]*; **In re Estate of Jakiella****,* 353 Pa.Super. 581, 510 A.2d 815 (1986).

>> To meet this burden, the contestant must establish by clear and convincing

evidence that: (1) the testator was of weakened intellect at the time the will was executed; (2) the proponent of the will stood in a confidential relationship with the testator; and (3) the proponent received substantial benefit under the will.

\* \* \*

The "weakened intellect" which must be shown in order to establish a **prima facie** case of undue influence upon the testator need not amount to testamentary incapacity. Although testamentary capacity is to be determined by the condition of the testator at the very time he executes a will, evidence of incapacity for a reasonable time before or after the making of a will is admissible as an indication of lack of capacity on the day the will is executed. While a testator may dispose of his property as he sees fit, the law is rigid in its insistence that one of weak mind, whether from inherent cause or by reason of illness, shall not be imposed upon by the art and craft of designing persons.

\* \* \*

For purposes of voiding a will on the ground of undue influence, a confidential relationship exists whenever circumstances make it certain that the parties did not deal on equal terms but that on the one side there was an overmastering influence, and on the other, dependence or trust, justifiably reposed.

**Burns**, **supra** at 1162-63 (internal citations omitted). Additionally, this Court has explained:

> The term "influence" does not encompass every line of conduct capable of convincing a self-directing person to dispose of property in one's favor. The law requires that the influence be control "acquired over another that virtually destroys [that person's] free agency." Conduct constituting influence **must** consist of "imprisonment of the body or mind, or fraud, or threats, or misrepresentations, or circumvention, or inordinate flattery, or physical or moral coercion, to such a degree as to prejudice the mind of the testator, to destroy his free agency and to operate as a present restraint upon him in the making of a will." A parent-child relationship does not establish the existence of a confidential relationship nor does the fact that the proponent has a power of attorney where the decedent wanted the proponent to act as attorney-in-fact.

*In re Estate of Angle*, *supra* at 123 (internal citations omitted) (emphasis added). An allegation of alcohol or drug use does not raise a presumption of weakened intellect. *In re Kerr's Estate*, 255 Pa. 399, 100 A. 127 (1917); *In re Masseth's Estate*, 213 Pa. 136, 62 A. 640 (1905).

Because undue influence has been described as subtle, intangible, yet recognizable by human experience, it may be shown by circumstantial evidence. *In re Ziel's Estate*, 467 Pa. 531, 359 A.2d 728 (1976). Nevertheless, opportunity, suspicion and conjecture do not create or amount to proof of either a confidential relationship or undue influence and cannot carry the cause. *In re Thompson's Estate*, 387 Pa. 82, 126 A.2d 740 (1956); *In re Quein's Estate*, 361 Pa. 133, 62 A.2d 909 (1949).

*In re Estate of Luongo*, 823 A.2d at 963-964 (Pa.Super. 2003).

Appellant asserts that the trial court's decision is conflicting as to whether appellant made out a *prima facie* case for undue influence. As appellant states, the trial court found that appellant laid out a *prima facie* case for undue influence. In a will contest, the opposing party has an opportunity to rebut the *prima facie* case. Although the trial court found that appellant established a *prima facie* case, conclusions of law that do not support a finding of undue influence can be based on the evidence presented by appellees. Although the trial court determined that appellant established a *prima facie* case of undue influence, once it heard appellees' testimony, it did not conclude that there was undue influence.

Appellant next contends that she established that decedent suffered from a weakened intellect. While there is no bright line rule that defines the term "weakened intellect," courts have recognized that a "weakened intellect" is often accompanied by disorientation, confusion, and forgetfulness. *In re Estate of Smaling*, 80 A.3d 485, 498 (Pa.Super. 2016).

Appellant recounts the worsening of decedent's health on April 8-9, 2012. According to the medical reports from Evangelical Community Hospital, decedent, a patient at the hospital, was calling out for the lights to go on and later was calling out "I love you" to anyone. (Evangelical Community Hospital, ICU/Stepdown Shift Assessment, 4/17/12 00:04 at 1.)

A note from a nurse later on April 17, 2012 indicated that decedent did not know where she was and did not answer orientation questions posed to her. (Evangelical Community Hospital, ICU/Stepdown Shift Assessment, 4/17/12 00:12 at 1.) At approximately 11:30 a.m. on April 17, 2012, decedent stated that she wanted to be allowed to die. (*Id.* at 6.) Decedent executed the will that appellant contested at approximately 5:00 p.m. on April 17, 2012. Appellant argues that this evidence of decedent's behavior was sufficient to establish that decedent possessed weakened intellect.

However, appellant does not take into account the evidence presented regarding decedent's intellect that appellees' presented. Appellees presented the deposition testimony of Doyle D. Ashburn, D.O. ("Dr. Ashburn"), decedent's treating physician at Evangelical Community Hospital and board-certified in critical care medicine.[1] Dr. Ashburn described decedent as presenting in the emergency room with respiratory distress on April 9, 2012. Decedent had pneumonia and had to have an endotracheal tube inserted. (Deposition of Doyle D. Ashburn, D.O., 12/12/13 at 10.) In addition to the pneumonia, Dr. Ashburn explained that decedent also had hypercapnia, a high carbon dioxide level and that people with that condition are "oftentimes confused, disoriented." (*Id.* at 15.) Dr. Ashburn further testified that decedent's mental state improved as her carbon dioxide levels

---

[1] The parties stipulated that Dr. Ashburn's discovery deposition would be used as a trial deposition.

returned to the normal range and her infection was getting under control. (*Id.* at 16.) Dr. Ashburn reported that by the morning of April 16, 2012 decedent's condition again declined as she was "less interactive, less responsive again." (*Id.* at 34.) On April 17, 2012, decedent was "very clear in what she wanted at that time" when she discussed end of life medical issues. (*Id.* at 40-41.) Dr. Ashburn described decedent as "very lucid, very clear. She knew she was in the hospital. She knew what was going on, why she was there." (*Id.* at 42.) Dr. Ashburn believed that decedent was competent to make decisions regarding her resuscitative wishes. (*Id.* at 50.)

Additionally, Melissa Lobos, Esq. ("Attorney Lobos"), an estate attorney and scrivener of the April 17, 2012 will, was called by appellant as a witness. Attorney Lobos testified that at the time decedent signed the April 17, 2012 will, it was quite clear that decedent "understood what was going on." (Notes of testimony, 6/20/16 at 133.) Attorney Lobos was shocked that decedent died the next day. (*Id.* at 134.) On cross-examination, Attorney Lobos testified that when she met with decedent on March 19, 2012, decedent's mental capacity was fine. She was in a nursing home after suffering a broken leg. (*Id.* at 137.) When Attorney Lobos again met with decedent on March 23, 2012, she found decedent "very competent." (*Id.* at 139.) When Attorney Lobos saw decedent in the hospital on April 17, 2012, Attorney Lobos ran through a list

of questions to ascertain whether decedent had sufficient capacity to execute a new will and was satisfied that decedent answered satisfactorily. (*Id.* at 145-146.) On redirect, Attorney Lobos responded to a question concerning whether she believed decedent was competent enough to sign the will:

> I am going to answer that this way. At that point I had been doing this for 25 years. I had done hundreds of wills. I have been in nursing homes. I have been in peoples' end of life situations. I know the questions to ask. I would not in any way put my professional license or reputation on the line if I did not believe that she knew what she was doing, or that she was being influenced by somebody else. I would have absolutely walked out of there with the Will, and my secretary, and she would not have signed it.

*Id.* at 165.

The trial court found credible the testimony of both Dr. Ashburn and Attorney Lobos that decedent was in control of her faculties and not weakened mentally during the execution of the April 17, 2012 will. In Orphans' Court proceedings, the trial court serves as the fact-finder. This court will not disturb the trial court's credibility determinations absent an abuse of discretion. *In re Estate of Presutti*, 783 A.2d 803, 805 (Pa.Super. 2001). Here, there is no allegation that the trial court abused its discretion. The testimony, accepted as credible by the trial court, was sufficient to establish that decedent did not possess a weakened intellect at the time she executed the will on April 17, 2012, which is the first prong of undue influence.

Appellant next contends that there was a confidential relationship between R. Reed and decedent. However, as the trial court stated, the failure to establish one element of undue influence results in the failure of the cause of action so that it is unnecessary to review the other elements of the action. Similarly, this court need not address appellant's contention that appellees received a substantial benefit, the third element of undue influence, from the April 17, 2012 will.

Appellant next contends that the trial court abused its discretion and/or committed an error of law when it found that appellees presented clear and convincing evidence of the absence of undue influence. Appellant asserts that the trial court never set forth any legally competent evidence that showed that appellees established the absence of undue influence. Appellant ignores the credible evidence that decedent did not suffer from a weakened intellect at the time she executed her last will and testament.

Appellant next contends that the trial court abused its discretion and/or committed an error of law when it granted a compulsory non-suit in favor of the appellees on appellant's claim of lack of testamentary capacity.

At the conclusion of appellant's case-in-chief, appellees moved for a non-suit on the issues of lack of testamentary capacity, undue influence, and fraud on the basis that appellant had failed to present clear and convincing evidence as to the allegations. With respect to testamentary capacity,

appellees argued that the testimony of Attorney Lobos, who was called as a witness for appellant, refuted the allegation of lack of testamentary capacity.

The trial court granted the motion for non-suit with respect to lack of testamentary capacity, undue influence with respect to all counts except the undue influence of R. Reed and D. Reed. (Notes of testimony, 6/21/16 at 256.)

In its order in lieu of opinion, the trial court stated that no appeal could be taken from the grant of the compulsory non-suit because appellant failed to file for a removal of the non-suit, pursuant to Pa.R.C.P. No. 230.1.

Appellant argues that the Pennsylvania Supreme Court recently adopted amendments to Orphans' Court Rule 8.1, effective September 1, 2016, where "no exceptions or post-trial motions may be filed to any order or decree of the court." Appellant concedes that under the prior Orphans' Court rules, it was necessary to file a motion for post-trial relief to remove a compulsory non-suit pursuant to Rule 227.1(a)(3) of the Pennsylvania Rules of Civil Procedure, but that is no longer the case under the new rule.

Before addressing the merits of appellant's appeal, this court must determine whether this court can hear the appeal.

"A nonsuit may be entered against a contestant in a will contest whenever the contestant has the burden of overcoming the presumption of validity arising from due proof of execution as required by law and the contestant has failed to satisfy that burden." 20 Pa.C.S.A. § 779(b).

- 17 -

> A motion for compulsory non-suit allows a defendant to test the sufficiency of a plaintiff's evidence and may be entered only in cases where it is clear that the plaintiff has not established a cause of action; in making this determination, the plaintiff must be given the benefit of all reasonable inferences arising from the evidence. When so viewed, a non-suit is properly entered if the plaintiff has not introduced sufficient evidence to establish the necessary elements to maintain a cause of action; it is the duty of the trial court to make this determination prior to the submission of the case to the jury. When this Court reviews the grant of a non-suit, we must resolve all conflicts in the evidence in favor of the party against whom the non-suit was entered.

*Taliferro v. Johns-Manville Corp.*, 617 A.2d 796, 799 (Pa.Super. 1992), citing *Hatbob v. Brown*, 575 A.2d 607 (Pa.Super. 1990), and *Eisenhauer v. Clock Towers Assoc.*, 582 A.2d 33 (Pa.Super. 1990).

Rule 230.1 of the Pennsylvania Rules of Civil Procedure provides that if a motion for compulsory non-suit is granted, then the plaintiff may file a written motion to remove the non-suit pursuant to Rule 227.1 of the Pennsylvania Rules of Civil Procedure.

Rule 227.1(a)(3) of the Pennsylvania Rules of Civil Procedure provides that a trial court may remove a non-suit following a written motion for post-trial relief.

Historically, it has been the law in Pennsylvania that the entry of a compulsory non-suit is not immediately appealable. Rather, it is the denial of a motion to remove a compulsory non-suit that is appealable. *Murphy v. International Druidic Society*, 152 A.3d 286, 289-290 (Pa.Super. 2016).

In **Murphy**, this court quashed an appeal where the appellant failed to file a post-trial motion after the entry of a compulsory non-suit and, instead, just filed an appeal.

The Pennsylvania Orphans' Court Rule 8.1 provides that no post-trial motions may be filed to any order or decree of the court. The explanatory comment states that post-trial motion practice applicable to civil cases does not apply to practice in Orphans' Court. The effective date of this rule was September 1, 2016.

Here, the motion for non-suit was granted on June 21, 2016. Under Rule 227.1(c)(2) of the Pennsylvania Rules of Civil Procedure, post-trial motions are to be filed within ten days of the notice of non-suit or the filing of the decision in the case of a non-jury trial. In **Papalia v. Montour Auto Service Co.**, 682 A.2d 343, 345 (Pa.Super. 1996), this court held that the time for filing a post-trial motion after a compulsory non-suit commences when the order of court is entered on the docket. Here, no order was issued until November 22, 2016. Therefore, appellant did not have the opportunity to file post-trial motions until this time. However, the date of the order was after the effective date of Pennsylvania Orphans' Court Rule 8.1 which provided that post-trial motions were unnecessary in Orphans' Court. As a result, this court agrees with appellant that she was not required to file any post-trial motions. Consequently, this court will address the merits of appellant's arguments on this issue.

Appellant argues that the trial court abused its discretion and/or committed an error of law when it granted the compulsory non-suit in favor of appellees on appellant's claim of lack of testamentary capacity.

"A testator possesses testamentary capacity if he knows those who are the natural objects of his bounty, of what his estate consists, and what he desires to be done with it, even though his memory may have been impaired by age or disease." ***Kuzma Estate***, 408 A.2d 1369, 1371 (Pa. 1979). The condition of the testator at the time of the execution of the will is the critical factor, although evidence of capacity or incapacity for a reasonable time before the execution of the will is admissible as evidence of capacity. ***Id.***

Appellant argues that decedent did not understand or appreciate her close relations at the time of the execution of the will because the scrivener of the will, Attorney Lobos, failed to review the impact that the execution of the will would have on appellant's daughter, Jennifer Colleluori ("Colleluori"), who had a close relationship with decedent. The alleged failure to discuss the effect of the new will on Colleluori does not appear to establish a lack of testamentary capacity. Attorney Lobos testified that decedent possessed sufficient capacity to execute the will. This court concludes that the failure to discuss Colleluori does not provide evidence of a lack of testamentary capacity.

Appellant further argues that the medical evidence of Dr. Ashburn shows that decedent lacked testamentary capacity. However, though

decedent experienced some confusion earlier in the day, Dr. Ashburn pronounced decedent to be very lucid, aware of her surroundings, and competent to make end of life decisions. Once again, this court agrees with the trial court that appellant failed to prove a lack of testamentary capacity.

Finally, appellant contends that the trial court abused its discretion or committed an error of law when it granted a compulsory non-suit on the claim of fraud. Appellant asserts that R. Reed and D. Reed barred appellant from seeing decedent from April 8, 2012, until decedent's death. Appellant wanted to make amends with decedent and explain her actions. Further, appellant asserts that no one asked decedent if she wanted to see or hear from appellant before the signing of the will.

"The essence of fraud is deceit intentionally and successfully practiced to induce another to part with property or with some legal right. Fraud is practiced when deception of another to his damage is brought about by a misrepresentation of fact or by silence when good faith required expression." ***Thorne's Estate***, 25 A.2d 811, 816 (Pa. 1942).

Appellant ignores the fact that she transferred assets from decedent to herself and that decedent was aware that she had done so. Appellant had the opportunity to convince decedent that she made a mistake before decedent's final hospitalization but failed to do so. The trial court found that these actions apparently led decedent to change the will. While it is clear that relations were and are strained between appellant and appellees, this

court determines that the trial court did not abuse its discretion when it granted the motion for non-suit as appellees successfully established that appellant failed to establish a cause of action for fraud.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/21/2017